UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN ZORETIC, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 6011 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Robert W. Gettleman |
| SHERIFF DARGE, Star #10912, SHERIFF | ) | |
| DYSON, Star #10429, SHERIFF TRYBA, Star | ) | |
| #11135 and SHERIFF TRYBA, Star #10276 | ) | |
| in their individual capacities, THOMAS J. DART | ) | |
| as COOK COUNTY SHERIFF in his | ) | |
| official capacity, COUNTY OF COOK, | ) | |
| CASTILLIAN COURT CONDOMINIUM | ) | |
| ASSOCIATION, FIRST MERIT REALTY | ) | |
| SERVICES INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS OFFICER DARGE, OFFICER DYSON AND THOMAS J. DART'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendants, OFFICER DARGE, OFFICER DYSON and THOMAS J. DART[1], by their attorney, ANITA ALVAREZ, Cook County State's Attorney, and through her Assistant, MICHAEL J. SORICH, and submits this Memorandum of Law in support of their Rule 56 motion for summary judgment:

**I. INTRODUCTION**

Marilyn Zoretic ("Plaintiff") brings this action under the Civil Rights Act, 42 U.S.C. § 1983 alleging that Defendant violated her constitutional rights during an eviction that took place on June 5, 2009. (Defendants' 56.1(a) Statement of Material Uncontested Facts, (hereinafter "56.1(a)"), ¶¶ 1, 4) Defendants Darge and Dyson are being sued in their individual capacity, while Defendant Dart is sued in his official capacity. (56.1(a) ¶ 3) Defendants bring this motion

---

[1] Cook County was also named as a Defendant, but by the agreement of the parties was dismissed with prejudice. (*See* Dkt. Entry #58).

1

pursuant to Rule 56 of the Federal Rules of Civil Procedure as there is no genuine issue of material fact that would preclude the entry of judgment in her favor as a matter of law. The undisputed record clearly establishes that Defendants acted appropriately and did not violate Plaintiff's constitutional rights.

Plaintiff has filed a seven count complaint, however, only Counts I-IV apply to Defendants Darge and Dyson, and Count V only applies to Defendant Dart. The constitutional violations alleged by Plaintiff against the individual Defendants are (a) due process violations; (b) excessive force; (c) illegal search and seizure; and (d) false imprisonment. (56.1(a) ¶ 4). Count V is a Monell claim against Defendant Dart. (56.1(a) ¶ 4). This Court should grant Defendants' Motion for Summary Judgment because the facts established by Plaintiff are not sufficient to support her claim that Defendants violated her constitutional rights. The statement of facts is set forth in Defendants' L.R. 56.1(a)(3) Statement of Uncontested Facts ("Statement of Facts"), filed separately, which Defendants incorporate into this memorandum of law.

## II. STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"The primary purpose of a motion for summary judgment is to avoid a useless trial." *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial. A party who will bear the burden of proof on a particular issue at trial may not rest on the pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denial of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir. 1987).

### III. ARGUMENT

Plaintiff has brought all four of her claims against Defendants Darge and Dyson pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Ledford v. Sullivan*, 105 F. 3d 354, 356 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994)). Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere. *Ledford,* 105 F.3d at 356. The first step in any § 1983 analysis is to pinpoint the specific constitutional right which was allegedly violated. *Id*., (citing *Graham v. Connor*, 490 U.S. 386, 394, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994)).

In order for any of the individual defendants to be held liable in their individual capacities under 42 U.S.C. § 1983, Plaintiff must demonstrate that the individual caused or participated in the alleged constitutional deprivation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Therefore, Defendant can only be held liable in their individual capacity if, by their own conduct, they caused or participated in the alleged constitutional violations. *Armstrong v.*

*Squadrito*, 152 F.3d 564, 581(7th Cir. 1998), citing *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir. 1985), cert. denied, 419 U.S. 816 (1986). Plaintiffs' claims must fail because the undisputed facts demonstrate that Defendants did not violate Plaintiff's constitutional rights.

### A. DEFENDANTS DARGE AND DYSON ARE ENTITLED TO QUASI-JUDICIAL IMMUNITY.

Defendants are entitled to quasi-judicial immunity because public officials who perform ministerial acts at the discretion of a judge are entitled to such immunity. *Ashbrook v. Hoffman* 617 F.2d 474, 477 (7th Cir. 1980); see also *Kelly v. Ogilvie*, 64 Ill. App. 2d 144, 147 (1st Dist. 1966). Specifically, a sheriff who executes an eviction in reliance on a facially valid court order is entitled to quasi-judicial immunity a section 1983 claim. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986). Here, the deputies entered the Plaintiff's residence pursuant to a facially valid court order. (*See* Def. Ex. J) The order plainly states that "this order is the command of the Circuit Court and violation thereof is a subject to the penalty of law." *Id*. Accordingly, Defendants are entitled to absolute quasi-judicial immunity for their acts during the eviction of Plaintiff and judgment as a matter of law should be entered on their behalf.

### B. DEFENDANTS DID NOT HAVE A DUTY TO PROVIDE PLAINTIFF WITH NOTICE OF THE JUNE 5, 2009 EVICTION.

Count I of Complaint alleges that Defendants failed to provide reasonable notice of the eviction which caused a deprivation of Plaintiff's liberty without due process of law. (*See* Def. Ex. A at ¶¶ 26-30) However, it is the plaintiff in the eviction action that must provide notice, not the Sheriff's office. Moreover, even if the Sheriff's Office had to provide notice, it is not within Defendant's responsibility to do so. The undisputed facts demonstrate that Defendants are entitled to judgment as a matter of law as to Count I of the Complaint.

Under Illinois law, a condominium association can bring a forcible detainer action for the failure or refusal by the owner of the condominium unit "to pay when due his or her proportionate share of the common expenses of such property, or of any other expenses lawfully agreed upon." 735 ILCS 5/9-102(7). In order to bring this action, the condominium association must first send the owner a "Demand for Possession." 735 ILCS 5/9-102(7); 735 ILCS 5/9-104.1. Once the "Demand for Possession" has been served on the owner of the unit, the condominium association can file the action for forcible detainer. 735 ILCS 5/9-102(7). Once the action is filed, the condominium association must then serve notice of the action upon the owner of the unit by summons. 735 ILCS 5/2-201(a).

If there was a failure to notify Plaintiff of the eviction, that failure falls on Castillian, not on Defendants or the Sheriff's Office. Defendants are tasked with executing orders of possession, not providing notice of them. (56.1(a) ¶ 3) In addition, it was not the Sheriff's Office's duty to provide notice of the eviction, it was Castillian's. (56.1(a) ¶ 6) The Sheriff's Office only becomes involved with an eviction after a plaintiff in a forcible detainer action files the appropriate paperwork before the court, a judge signs the order of possession and the filing fee is paid by the plaintiff to the clerk. (56.1(a) ¶ 5) If Castillian failed to provide proper notice to Plaintiff, that failure cannot be impugned to Defendant or the Sheriff's Office. Defendants cannot be held individually liable because they did not cause or participate in the alleged failure to provide notice to Plaintiff. *See McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982).

Moreover, Plaintiff clearly was provided with notice of the eviction. In the present case, Castillian Court Condominium Association ("Castillian") filed an action for forcible detainer against "Marina Shef and All Unknown Occupants" for Ms. Shef's failure to pay the condominium assessments. (56.1(a) ¶ 18) On August 17, 2008, Plaintiff was served with an

"Alias Summons For Trial" which indicated that eviction proceedings had begun against "Marina Shef and All Unknown Occupants" of 1104 Castilian Court, Unit 209 in the Circuit Court of Cook County, First Municipal District. (56.1(a) ¶ 19) Further, after January of 2009, Plaintiff failed to pay rent and was informed on multiple occasions that she was going to be evicted. (56.1(a) ¶¶ 26-28, 49) Thus, Defendants are entitled to judgment as a matter of law on Count I of the Complaint.

### C. DEFENDANTS DID NOT USE EXCESSIVE FORCE AGAINST PLAINTIFF.

Plaintiff alleges that Defendants used excessive force against her by threatening Plaintiff and her husband with their guns drawn and pointing it at Plaintiff. (Def. Ex. A at ¶ 20) Plaintiff asserts that the force used by Defendants "was unreasonable, unprovoked, unnecessary and excessive." (Def. Ex. A at ¶ 32) Plaintiff concedes that Defendants did not touch Plaintiff, nor was Plaintiff put in handcuffs. (56.1(a) ¶ 47) Therefore, Plaintiff's only claim of excessive force is that Defendants entered the unit with their weapons pointed at Plaintiff for an excessive amount of time. The undisputed facts demonstrate that Plaintiff's claim of excessive force must fail.

The use of force during the course of an arrest, investigatory stop, or other seizure of a citizen is analyzed under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 397 (1989). Whether a police officer violated the Fourth Amendment "through an unreasonable seizure done with the use of excessive force…depends on whether it was objectively reasonable, judged from the perspective of a reasonable officer on the scene…[and] requires an analysis of the facts and circumstances of the case…" *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009). The Seventh Circuit has found that pointing a gun at a person during a valid stop is not *per se* unreasonable. *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989).

Exigent circumstances in the present case necessitated Defendants entering Unit 209 with their gun drawn. Defendants had the right to be on the property and enter Unit 209 because of the valid order of possession. (Def. Ex. J) The officers knocked and announced their presence and there was no answer. (56.1(a) ¶ 33) The door was unlocked, so Defendants drew their weapons to enter the unit for their own safety and because they did not know what was on the other side of the door. (56.1(a) ¶ 34) When Defendants saw that Plaintiff and her husband were unarmed, they put their weapons down. (56.1(a) ¶ 36) For officer's safety, when a forced entry is made, it is standard procedure to enter with the weapon drawn. (56.1(a) ¶ 34) When Defendants determined that Plaintiff was unarmed, their weapons were no longer pointing at Plaintiff, which demonstrates that Defendants did not use excessive force.

In *Grayer v. Greenwood*, 2010 U.S. Dist. LEXIS 24527 (N.D. Ill. March 16, 2010)(Nordberg, J.), the district court found that the conduct of the defendant officers did not amount to excessive force when they kept their guns pointed at the Plaintiffs for three minutes while they searched an apartment for the named individual in a search warrant. *Grayer*, 2010 U.S. DIST. LEXIS at *21. In the case at bar, Defendants put their guns down as soon as they saw that Plaintiff and her husband were unarmed, which is much less time than the three minutes that was found acceptable in *Grayer*. (56.1(a) ¶ 36) Therefore, Defendants are entitled to judgment as a matter of law as to Count II of the Complaint.

**D. DEFENDANTS' ACTIONS WERE REASONABLE AND DID NOT CONSTITUTE AN ILLEGAL SEARCH OR SEIZURE OF PLAINTIFF OR HER PROPERTY.**

Count III of Plaintiff's Complaint alleges that "[t]he searches and seizures of Plaintiff's person, property, and belongings along with the unlawful detention of Plaintiff in her dwelling performed willfully and wantonly by Defendants…were in violation of Plaintiff's right to be free

of unreasonable searches and seizures under the Fourth Amendment to the Constitution and 42 U.S.C § 1983." (Def. Ex. A at ¶ 36) Plaintiff's allegations specifically claim an illegal search of her property and an illegal seizure of her person. The undisputed facts demonstrate that Plaintiff was not the victim of an illegal search or seizure.

The Fourth Amendment of the Constitution guarantees "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, …" U.S Const. Amend IV. "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). The central requirement of the Fourth Amendment is one of reasonableness. *Id.* To state a constitutional claim for illegal search or seizure, Plaintiff must demonstrate that the search or seizure was unreasonable. *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002). In determining whether a search or seizure is reasonable, a court must "evaluate the search or seizure under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999). "Whether or not a seizure is reasonable under this balancing act is determined by examining the totality of the circumstances." *White,* 310 F.3d at 995.

Plaintiff concedes that Defendants did not touch Plaintiff, so the only claim for illegal search Plaintiff could allege is an illegal search of Plaintiff's property. (56.1(a) ¶ 47) The order of possession means that Defendants could enter Unit 209. (Def. Ex. J) The undisputed facts establish that a protective sweep of the unit was done shortly after Plaintiff and her husband were

8

escorted to the living room to determine if there were any other occupants. (56.1(a) ¶¶ 37-38) During the protective sweep, none of the officers looked in any drawers, cabinets or boxes, just in places where an individual could be hiding, such as a closet. (56.1(a) ¶ 38) The protective sweep lasted no more than two minutes. (56.1(a) ¶ 39) In addition, Plaintiff requested that she be allowed to take with her jewelry and $400 in cash, which were photographed by the eviction team. (56.1(a) ¶¶ 42-43) This sweep was nothing more than a cursory search for other occupants in the home. *See Maryland v. Buie*, 494 U.S 325, 334 (1990). The short duration and limited nature of the sweep are indicative of a constitutional action by Defendants.

      The undisputed facts also demonstrate that any seizure of Plaintiff was reasonable because Plaintiff was detained for a brief period of time so that all of the individuals in Unit 209 could be located and escorted off the property. (56.1(a) ¶ 39) The Order of Possession indicated that all "unknown occupants" were to be evicted from the premises. (56.1(a) ¶ 20) Defendants and the other officers had no idea when they arrived at the Unit how many individuals were inside, so they needed to search the entire unit to determine who was there. (56.1(a) ¶ 38) While the protective sweep was going on, Plaintiff and her husband were detained for only two minutes. (56.1(a) ¶ 37-39) This seizure was reasonable because it was short and needed to be done to ascertain who was present in the unit. After the sweep was completed, Plaintiff and her husband completed the eviction questionnaire, even though they did not have to, which is evidence that they were not detained against their wishes or seized after the protective sweep was completed. (56.1(a) ¶¶ 12, 40) The undisputed facts demonstrate that the circumstances surrounding Defendants' entry into the unit were reasonable and did not violate the Fourth or Fourteenth Amendments. Thus, Defendants are entitled to judgment as a matter of law as to Count III.

### E. PLAINTIFF'S FALSE IMPRISONMENT CLAIM IS DUPLICATIVE OF HER CLAIM ALLEGED IN COUNT III OF AN ILLEGAL SEIZURE.

Count IV of Plaintiff's Complaint alleges false imprisonment which is normally a state law claim, but Plaintiff has brought it pursuant to 1983. This claim is no different than the illegal seizure claim made in Count III of Plaintiff's Complaint. Because these claims are duplicative, Plaintiff's claim for false imprisonment fails for the same reasons Plaintiff's illegal seizure claim fails. Plaintiff was detained briefly while a protective sweep was conducted. As was argued above, this detainment was necessary and reasonable. Because the detainment was necessary and reasonable, Plaintiff cannot make a claim for false imprisonment. Therefore, Defendants are entitled to judgment as a matter of law as to Count IV of Plaintiff's Complaint.

### F. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity protects public officials who perform discretionary functions from liability and from suit for actions that do not violate clearly established constitutional law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The United States Supreme Court has set forth a two-step inquiry to determine whether a government official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Akande v. Grounds*, 555 F. 3d 586, 589-90 (7th Cir. 2009). First, a court must decide whether the facts alleged by the plaintiff set forth a violation of a constitutional right. If the facts show that the conduct did not violate a clearly established constitutional right, immunity applies and the court need not proceed to the second step. *Saucier*, 533 U.S. at 202; *Akande*, 555 F.3d at 590. If the plaintiff establishes the first prong, the court must determine whether the right was "clearly established at the time of the defendant's alleged misconduct." *Akande*, 555 F.3d at 590.

In the case at bar, as argued above, Defendants did not violate Plaintiff's constitutional rights. Instead, Defendants acted reasonably given the circumstances. The officers knocked and

announced their presence and there was no answer. (56.1(a) ¶ 33) The door was unlocked, so Defendants and the other officers drew their weapons to enter the unit for their own safety and because they did not know what was on the other side of the door. (56.1(a) ¶ 34) After entering the unit and observing that Plaintiff and her husband was unarmed, Defendants put the weapons down. (56.1(a) ¶ 36) Defendants and the other officers had no idea when they arrived at the unit how many individuals were inside, so they needed to search the entire unit to determine who was there. (56.1(a) ¶ 38) While the protective sweep was going on, none of the officers looked in any drawers, cabinets or boxes, just in places where an individual could be hiding, such as a closet. (56.1(a) ¶ 38) Plaintiff and her husband were detained for only two minutes. (56.1(a) ¶ 37-39) These undisputed facts demonstrate that Plaintiff's constitutional rights were not violated and, therefore, the resolution of the first prong is dispositive.

Even if Plaintiff could establish the first prong Plaintiff cannot establish the second prong because she cannot demonstrate that given the circumstances, these rights were clearly established at the time of the alleged incident. As to Count I, there is no statute or case law that establishes Defendants had to provide notice of the eviction. The laws of the State of Illinois establish that it is on the condominium association, in this case Castillian, to provide notice of the eviction to Plaintiff. *See* 735 ILCS 5/9-102(7); 735 ILCS 5/9-104.1. Moreover, the validity of the order of possession is checked by a supervisor in the Warrants, Levies and Evictions Unit and was checked again while the eviction was taking place. (56.1(a) ¶¶ 7, 41) Therefore, qualified immunity shields Plaintiff from liability as to Count I of Plaintiff's Complaint.

Defendants are also entitled to qualified immunity as it pertains to Count II of Plaintiff's Complaint. Given the fact that there was no answer when the officers knocked and announced and the door was unlocked, it would not be unreasonable for Defendants to display their firearms

11

when they entered the unit because they did not know who or what was on the other side of the door. (56.1(a) ¶¶ 33-34) Because of the risk involved in entering a home where the door is unlocked, Defendants easily could have believed that they had "legitimate justification under the law" to enter the unit with her gun drawn. *Anderson v. City of W. Bend Police Dep't*, 774 F. Supp. 2d 925, 950 (E.D. Wis. February 28, 2011)(Stadtmueller, J.). Moreover, Defendants put their guns down as soon as they saw that Plaintiff was unarmed. (56.1(a) ¶ 36) "The cases in which the Seventh Circuit has found the display of a weapon to be unreasonable typically involved verbal threats or shocking use of the weapon." *Anderson,* 774 F. Supp. 2d at 950. There were no verbal threats or shocking behavior on the part of Defendants, therefore they are entitled to qualified immunity as to Count II.

Finally, Defendants are entitled to qualified immunity as to Counts III and IV of Plaintiff's Complaint because it was reasonable for the officers to conduct a protective sweep and bring all occupants of the unit to one central location. "[A] protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Maryland v. Buie*, 494 U.S at 334. The protective sweep done in this case meets this standard. (56.1(a) ¶¶ 38-39)

Moreover, while the protective sweep in this case was not done pursuant to an arrest, it was not unreasonable for the officers to do a protective sweep and locate all occupants of the unit. It is not unreasonable because the order of possession called for Marina Shef and all unknown occupants to be removed from the unit so possession of the unit could be restored to Castillian. (56.1(a) ¶ 20) Thus, the officers had to check and make sure all individuals in the unit were accounted for. A protective sweep accomplished that task with minimal intrusion,

especially since it only took two minutes and the officers only looked in places where a person could be hiding. (56.1(a) ¶¶ 38-39) Therefore, Defendants are entitled to qualified immunity as to Counts III and IV.

### G. PLAINTIFF FAILS TO STATE A VALID § 1983 CLAIM AGAINST DEFENDANT DART IN HIS OFFICIAL CAPACITY.

Plaintiff fails to present any evidence to support a claim for liability against Defendant Dart in his official capacity. Actions brought against government officers in their official capacities are actually claims against the government entity for which the officers work. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). It is well settled that governmental employees cannot be held liable in their official capacities in a § 1983 action unless a plaintiff can show that he or she suffered injuries of a constitutional magnitude as the result of an official custom, policy or practice. *Monell v. Department of Social Services of the City of New York*, 98 S. Ct. 2018, 2036 (1977). The *Monell* court rejected a theory of *de facto respondeat superior* liability on governmental entities. *Id.* at 2037.

To succeed on an official capacity claim based on an express policy, Plaintiff must show that an express written policy, when enforced, was the moving force behind the constitutional violation suffered by the Plaintiff. In the absence of an express policy or allegations involving an injury caused by a person with final policy making authority, the plaintiff must assert a "widespread" practice which is so permanent and well settled as to constitute a custom. *Robles v. City of Fort Wayne*, 113 F.3d 732, 737 (7th Cir. 1997). To demonstrate that Defendant Dart is liable for a custom or practice, the plaintiff must show that he was "deliberately indifferent as to [the] known or obvious consequences." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). "In other words, [officials] must have been aware of the risk created by the custom or

practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

Plaintiff has failed to put forth any evidence to demonstrate that her injury was caused by an express policy, custom, or practice by Defendant Dart, much less any other person that has final policy making authority. The Sheriff's office has official policies in place when deputy officers conduct evictions. Plaintiff cannot prove that the Sheriff's office had a widespread policy of failing to investigate deputy sheriff misconduct or failing to properly train deputy sheriffs on proper eviction procedure. In fact, the evidence is quite to the contrary.

It is undisputed that a supervisor with the Sheriff's Office verifies the order is in fact a valid order for eviction and if the order is still a valid order for eviction, that order will be assigned to a team of officers to go out and execute. (56.1(a) ¶ 7). There is a specific General Order, 5500.1, which sets forth the requirement of deputies when executing an eviction order. (56.1(a) ¶ 8). After ensuring the eviction order is valid, the team of officers meets with the plaintiff or agent of the plaintiff who obtained the order at the address. (56.1(a) ¶ 9). Before entry is made into the residence, the officers knock and announce their presence and if no one responds, forced entry is made. (56.1(a) ¶ 10Once inside the residence a protective sweep is done to identify all of the occupants, the occupants are informed that they are being evicted pursuant to court order and all occupants are directed to one room of the residence where the occupants provide identification to verify their identities. (56.1(a) ¶ 10). After an "Eviction Questionnaire" is completed and a warrant check is done on the occupants, those occupants are removed and possession is tendered to plaintiff/agent of plaintiff who obtained the eviction order. (56.1(a) ¶¶ 11-12). At no point after the eviction of Plaintiff on June 5, 2009, did she ever file a formal complaint against any of the deputy sheriffs who evicted her. (56.1(a) ¶ 52). The record is

devoid of any evidence presented by Plaintiff which would indicate a custom or practice of failing to investigate deputy sheriff misconduct or failing to properly train deputy sheriffs on proper eviction procedure. As such, Defendants' Motion for Summary Judgment must be granted and the entire complaint must be dismissed.

## CONCLUSION

WHEREFORE Defendants OFFICER DARGE, OFFICER DYSON and THOMAS J. DART, for all of the foregoing reasons, respectfully requests that this Honorable Court grant Defendants' summary judgment along with fees and costs, and further, that this Court dismiss Plaintiff's Complaint for failing to state a claim on which relief may be granted and/or as frivolous pursuant to § 1915(e)(2)(B)(i)(ii) along with any such other relief as this Court deems just and appropriate.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By: /s/ Michael J. Sorich
Michael J. Sorich
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Il 60602
(312) 603-5170